

**FILED & ENTERED**

**FEB 10 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY evangeli  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Harry Roussos, Debtor | Case Nos.:    2:15-bk-21624-ER and 2:15-bk-21626-ER (jointly administered) |
| In re:    Theodosios Roussos, Debtor (jointly administered) | Chapter:    7 |
| | **MEMORANDUM OF DECISION GRANTING MOTION FOR A STAY PENDING APPEAL OF TURNOVER ORDER** |
| | [No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

Before the Court is a motion for a stay pending appeal of an order requiring Theodosios Roussos ("Theodosios")[1] to turnover to the Chapter 7 Trustee ("Trustee") three apartment units located at 153 San Vicente Boulevard, Santa Monica, CA (the "Units"). For the reasons set forth below, the motion is GRANTED.

---

[1] A given name is used to distinguish Theodosios Roussos from his brother, Harry Roussos, who is also involved in this litigation. No disrespect is intended.

## I. Facts[2]

A lengthy background is set forth in the Court's Memorandum of Decision denying Theodosios' motion for stays pending appeal of two related orders. *See* Memorandum of Decision Denying Motion for Stay Pending Appeal [Doc. No. 719]. Only a brief recitation of the facts is provided here.

This litigation involves the Trustee's attempt to recover, on behalf of the estates of Harry and Theodosios Roussos (the "Roussos Brothers"), a (1) 20-unit apartment building located at 2727–2741 Abbot Kinney Boulevard, Venice, CA (the "Abbot Kinney Property") and (2) a 30-unit building located at 153 San Vicente Boulevard, Santa Monica, CA (the "San Vicente Property") (collectively, the "Properties").

On October 6, 2016, the Court approved a settlement agreement (the "Settlement Agreement") providing, *inter alia*, that the Properties are property of the bankruptcy estates of Theodosios and Harry Roussos. *See* Order Approving Settlement Agreement ("Settlement Approval Order") [Doc. No. 591]. On October 7, 2016, the Court entered judgments pursuant to the Settlement Agreement which provided, *inter alia*, that the Trustee holds title to the Properties (the "Property Judgments").[3] The Trustee is presently marketing the San Vicente Property for sale.

On February 1, 2017, the Court denied Theodosios' motion for stays pending appeal of the Settlement Approval Order and a related order finding that the Settlement Agreement was entered into in good faith. *See* Order Denying Motion for Stay Pending Appeal [Doc. No. 721] and Memorandum of Decision Denying Motion for Stay Pending Appeal [Doc. No. 719].

On January 12, 2017, the Court granted the Trustee's motion for an order compelling Theodosios to turnover possession of the Units ("Turnover Motion"). *See* Order Granting Chapter 7 Trustee's Motion for Order (1) Compelling Theodosios Roussos, Paula Roussos, and S.M.B. Management, Inc., a California Corporation, to Turnover Property of the Estate and (2) Authorizing the Trustee to Utilize Services of the United States Marshals to Enforce Court Order ("Turnover Order") [Doc. No. 699]. Theodosios subsequently filed an emergency motion to stay the Turnover Order pending appeal. The Court stayed the effectiveness of the Turnover Order pending adjudication of Theodosios' motion.

The Court entered the Turnover Order based upon its findings that Theodosios, the Debtor, was in control of the Units, and that the Units were property of the bankruptcy estate:

> The Court finds that the Debtor, Theodosios Roussos, is in possession, custody, and control of the Units. At his 2000 judgment debtor examination, Theodosios testified that he and his family were permitted to live in the Units in exchange for property management services rendered by Theodosios to S.M.B. That is, it was Theodosios' labor that gave rise to the right of Theodosios and his family to occupy the Units. All three purported leases proffered in opposition to the Turnover Motion are signed only by

---

[2] The Court reviewed the following papers in adjudicating this matter:
  1) Emergency Motion of Theodosios Roussos for Stay Pending Appeal of Turnover Order [Doc. No. 702];
  2) Chapter 7 Trustee's Opposition to Emergency Motion of Theodosios Roussos for Stay Pending Appeal of Turnover Order [Doc. No. 712];
  3) Reply of Theodosios Roussos in Support of Motion for Stay Pending Appeal of the Turnover Order [Doc. No. 718].

[3] *See* Doc. No. 405, Adv. No. 2:15-ap-01406-ER; Doc. No. 429, Adv. No. 2:15-ap-01404-ER.

Theodosios Roussos and Paula Roussos; Paula Roussos is now deceased. Although
Theodosios' children and the spouse of one child, Dr. Singer, also live in the Units, both
the purported leases and Theodosios' previous testimony establish that it is Theodosios
who is control of the Units. Accordingly, the Trustee may seek turnover of the Units by
motion, rather than through an adversary proceeding, since it is the Debtor who is in
control of the Units.

Final Ruling Granting Turnover Motion [Doc. No. 678] at 4–5.

The Court found that turnover of the Units was required notwithstanding Theodosios'
contention that Harris Roussos, Thalia Singer, and Theodosios Roussos (Theodosios' adult
children) and Dr. George Singer (the spouse of Thalia Singer) (collectively, the "Movants") had
a valid tenancy interest in the Units. First, the Court found that Theodosios was judicially
estopped from introducing leases as evidence that he and the other Movants had a valid tenancy
in the Units:

"'Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent
positions, precludes a party from gaining an advantage by taking one position, and then
seeking a second advantage by taking an incompatible position.' 'Judicial estoppel is an
equitable doctrine that is intended to protect the integrity of the judicial process by
preventing a litigant from playing fast and loose with the courts.'" *Whaley v. Belleque*,
520 F.3d 997, 1002 (9th Cir. 2008). Even after the Court entered an order compelling
Theodosios to respond to the Trustee's discovery requests, Theodosios did not produce
the leases, which were responsive to the requests. That is, by failing to produce the
leases, Theodosios took the position that he had no leasehold interest in the San Vicente
Property. Theodosios may not now take the contrary position that he does hold a
leasehold interest in the San Vicente Property. In addition, at a judgment debtor
examination conducted in 2000, Theodosios testified that there was no written agreement
evidencing the arrangement by which he was permitted to live in the San Vicente
Property in exchange for providing property management services to S.M.B.

*Id.* at 5.

Second, the Court found that turnover would be required even if the leases, the authenticity
of which was questionable, were validly executed between S.M.B. and the Movants:

The Court has entered an order providing that the 1994 sale of the San Vicente Property
to S.M.B. is void *ab initio*, and that the San Vicente Property is property of the jointly-
administered estates of Theodosios and Harry Roussos. Therefore, under the doctrine of
merger, whatever leasehold interest Theodosios may have had with S.M.B. has merged
with his estate's ownership interest in the San Vicente Property, and the leasehold interest
has ceased to exist.[4] *See Kolodge v. Boyd*, 88 Cal. App. 4th 349, 361, 105 Cal. Rptr. 2d
749, 759 (2001) ("Whenever a greater estate and a lesser estate in the same parcel of real
property are held by the same person, without an intermediate interest or estate, the lesser
estate generally merges into the greater estate and is extinguished."). As the purported

---

[4] No contractual relationship exists between S.M.B. and the other parties now claiming an
interest in the Units. At the time the purported leases were executed, those parties were minors
and lacked capacity to enter into a contract. Further, those parties did sign the purported leases.
No contractual relationship could have been formed between S.M.B. and Dr. George Singer,
because he was not a tenant at the time of the purported execution of the leases. Further, Dr.
Singer is not listed as a tenant on any of the leases.

leasehold interest is non-existent, Theodosios cannot rely upon that interest as a basis to
remain in the San Vicente Property.

*Id.* at 5–6.

In support of their motion to stay the Turnover Order pending appeal, Movants argue that the
Court erred in determining that they lacked tenancy rights in the Units. Movants assert that they
will be irreparably harmed by being divested of their interests in the Units. Movants further
argue that a stay will not substantially injure the Trustee, because the San Vicente Property is
likely to sell for far more than the $11 million necessary to satisfy the Property Judgments. The
Trustee contends that he will suffer substantial harm absent a stay. According to the Trustee,
Movant's continued presence in the Units will decrease the San Vicente Property's sale price,
since the Movants are not paying rent.

## II. Findings and Conclusions

Pursuant to Bankruptcy Rule 8007(a)(1), the Court may issue a stay of a judgment, order, or
decree pending appeal. In determining whether to grant a stay pending appeal, the Court
considers the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on
> the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether
> issuance of the stay will substantially injure the other parties interested in the proceeding;
> and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009).

As the Supreme Court has explained, a stay pending appeal

> "is not a matter of right, even if irreparable injury might otherwise result." *Virginian
> R. Co.,* 272 U.S., at 672, 47 S.Ct. 222. It is instead "an exercise of judicial discretion,"
> and "[t]he propriety of its issue is dependent upon the circumstances of the particular
> case." *Id.,* at 672–673, 47 S.Ct. 222; *see Hilton, supra,* at 777, 107 S.Ct. 2113 ("[T]he
> traditional stay factors contemplate individualized judgments in each case"). The party
> requesting a stay bears the burden of showing that the circumstances justify an exercise
> of that discretion….
>
> The first two factors of the traditional standard are the most critical. It is not enough
> that the chance of success on the merits be "better than negligible." … By the same
> token, simply showing some "possibility of irreparable injury," *Abbassi v. INS,* 143 F.3d
> 513, 514 (C.A.9 1998), fails to satisfy the second factor.

*Id.* at 434–35.

To be entitled to a stay pending appeal, the moving party must make a "minimum
permissible showing" with respect to each of the four factors. *Leiva-Perez v. Holder*, 640 F.3d
962, 965 (9th Cir. 2011). Provided the moving party meets a minimum threshold as to each
factor, the Court may "balance the various stay factors once they are established." *Id.* at 965.
Under this balancing approach, a stronger showing of irreparable harm can offset a weaker
showing of likelihood of success on the merits, and vice versa—provided that the minimum
threshold with respect to each factor has been established. *Id.* at 965–66; *see also id.* at 964
("Petitioner must show either a probability of success on the merits and the possibility of
irreparable injury, or that serious legal questions are raised and the balance of hardships tips
sharply in petitioner's favor. These standards represent the outer extremes of a continuum, with
the relative hardships to the parties providing the critical element in determining at what point on
the continuum a stay pending review is justified.").

Having considered the *Nken* factors, the Court finds that Movants are entitled to a stay pending appeal of the Turnover Order.

Likelihood of Success on the Merits

As the Ninth Circuit has explained:

> The first showing a stay petitioner must make is "a strong showing that he is likely to succeed on the merits." *Id.* at 1761 (quoting *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113) (quotation marks omitted). There is some uncertainty as to the exact degree of likely success that stay petitioners must show, due principally to the fact that courts routinely use different formulations to describe this element of the stay test. What is clear, however, is that to justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits….
>
> There are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a "reasonable probability" or "fair prospect," as *Hollingsworth,* 130 S.Ct. at 710, suggests; "a substantial case on the merits," in *Hilton*'s words, 481 U.S. at 778, 107 S.Ct. 2113; or, as articulated in *Abbassi,* 143 F.3d at 514, that "serious legal questions are raised." We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

*Leiva-Perez*, 640 F.3d at 967–68.

Movants advance two legal theories as to why they are likely to obtain reversal of the Turnover Order on appeal. First, Movants assert that the Court erred in approving the Settlement Agreement under which the Trustee acquired title to the San Vicente Property. Obviously, without possession of the San Vicente Property, the Trustee would not be entitled to turnover of the Units. In its Memorandum of Decision denying Theodosios' motion to stay the Settlement Approval Order, the Court has explained why Movants are unlikely to succeed on the merits with respect to this theory. *See* Memorandum of Decision Denying Motion for Stay Pending Appeal at 10–11 [Doc. No. 719].

Second, Movants contend that turnover is inappropriate because they hold either a leasehold interest in the Units, or the right to remain in the Units as holdover tenants. As noted above, the Court does not find that the alleged tenancy interests are grounds for denial of the Turnover Motion. However, the issue of whether Movants hold a tenancy interest that can defeat turnover raises legal questions of sufficient import to satisfy Movant's burden regarding the likelihood of success on the merits. The serious legal questions raised by the Movants include (1) whether Theodosios is judicially estopped from introducing the lease as evidence that the Movants hold a valid tenancy interest; (2) whether the lease introduced by Theodosios is authentic; and (3) whether any tenancy rights conferred by the alleged lease have been extinguished under the doctrine of merger.

Irreparable Harm

To obtain a stay pending appeal, Movants must show that "irreparable harm is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968. Movants' burden "with regard to irreparable harm is higher than it is on the likelihood of success prong"; Movants must show "that an irreparable injury is the more probable or likely outcome." *Id.*

"It is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011). Because the Turnover Order would deprive the Movants of an alleged tenancy interest in the Units, this factor weighs in favor of a stay.

It is important to draw a distinction between the (1) tenancy interests in the Units claimed by Theodosios and the Movants and the (2) indirect interest in the entirety of the San Vicente Property claimed by Theodosios. The asserted tenancy interest in the Units is based upon the alleged leases. By contrast, Theodosios' claimed interest in the entirety of the San Vicente Property is based on Theodosios' status as the co-trustee of S.M.B. Investors Associates Irrevocable Trust ("S.M.B. Trust"). The S.M.B. Trust owns a 99% interest in S.M.B., which in turns holds title to the San Vicente Property.

The motion to stay the Settlement Approval Order implicated Theodosios' indirect interest in the entirety of the San Vicente Property, whereas the motion to stay the Turnover Order implicates the asserted tenancy interest in the Units. The different property interests at stake explains the differences in the Court's findings regarding the existence of irreparable harm. In declining to stay the Settlement Approval Order, the Court found that Theodosios had failed to show that he would be irreparably harmed by sale of the San Vicente Property:

> Theodosios' argument that he will be irreparably harmed by sale of the Properties is further undercut by Judge Shook's decision in the binding arbitration to which Theodosios voluntarily submitted. The Arbitrator's Decision provides that the Properties are to be marketed and sold, and specifies that the sale must occur even if the voting requirements of the Partnership Agreements are not satisfied. Therefore, regardless of the outcome of the appeal, the Properties will be sold—either pursuant to the Settlement Agreement or pursuant to the Arbitrator's Decision.
>
> It is true that if the Properties were sold pursuant to the Arbitrator's Decision rather than pursuant to the Settlement Agreement, the distribution of the sale proceeds would be different. A sale pursuant to the Arbitrator's Decision would result in entities in which Theodosios holds an interest receiving a greater proportion of the sales proceeds. However, this fact only underscores the absence of irreparable harm. It shows that the principal injury to Theodosios absent a stay is economic—namely, that Theodosios or the entities in which he holds an interest will receive less of the sales proceeds. As the Ninth Circuit has held, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Memorandum of Decision Denying Motion for Stay Pending Appeal [Doc. No. 719] at 11.

The Court's finding of an absence of irreparable harm is further supported by the fact that Theodosios does not hold title to the San Vicente Property. Because Theodosios holds only an indirect interest in the San Vicente Property, he cannot maintain that sale of that property would constitute irreparable harm in the form of loss of an interest in real estate. Theodosios' situation is analogous to that of an investor in a publicly traded real-estate investment trust ("REIT"). A REIT shareholder can claim only economic loss—not the irreparable harm of a loss of an interest in real estate—if the REIT in which he hold shares loses some of its property.

Unlike the motion to stay the Settlement Approval Order, the motion to stay the Turnover Order implicates Movants' asserted tenancy interests in the Units. The loss of that claimed tenancy interest—in contrast to the loss of Theodosios' indirect interest in the San Vicente Property—does constitute irreparable harm.

It is also worth pointing out that the validity of Movants' asserted tenancy interest does not necessarily depend upon the validity of the Settlement Approval Order. For example, in the event an appellate court reverses the Turnover Order—based on a finding that Movants have an enforceable leasehold interest in the Units, or have rights as holdover tenants in the Units, or have some other form of tenancy rights—the San Vicente Property could still be sold as contemplated by the Settlement Agreement. The new owner would simply take the San Vicente Property subject to whatever tenancy rights the Movants have. Large apartment complexes such as the San Vicente Property are typically sold subject to the interests of existing tenants.

Injury to Other Interested Parties

Issuance of a stay will not substantially injure the Trustee. The Trustee can still market the San Vicente Property while Movants remain in possession of the Units. As noted, apartment buildings of the size of the San Vicente Property are typically sold while occupied.

However, the hearing on the Turnover Motion established that Theodosios is attempting to sabotage the sale of the San Vicente Property by informing potential buyers that the sale is subject to litigation. To the extent that Theodosios' continued occupancy permits him to confront and discourage potential buyers of the San Vicente Property, a stay of the Turnover Order does injure the Trustee. Bankruptcy Rule 8007(e) authorizes the Court to "issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." To protect the rights of the Trustee to market the San Vicente Property, the Court will condition issuance of a stay upon the following:

1) The Trustee shall provide reasonable notification to Theodosios of the dates and times when potential purchasers or their representatives (collectively, "Potential Purchasers") will be touring the San Vicente Property.
2) During the time when Potential Purchasers are touring the San Vicente Property, Theodosios must either:
   a) Remain in his apartment unit and have no absolutely no contact with the Potential Purchasers; or
   b) Leave the San Vicente Property before any Potential Purchasers are scheduled to arrive, and not return until after Potential Purchasers have left the San Vicente Property.

In addition, as discussed below, the Court will condition issuance of a stay upon the furnishing of a supersedeas bond.

Public Interest

Aspects of the public interest favor both sides. "There is a great public interest in the efficient administration of the bankruptcy system," including the prompt execution of turnover orders. *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 148 (Bankr. D. Nev. 2008). There is a countervailing public interest in insuring that tenancy rights are not wrongfully abrogated. In the present case, these competing public interests are in equipoise. As a result, the public interest factor neither weighs in favor of or against issuance of a stay.

Supersedeas Bond

Bankruptcy Rule 8007(c) provides that the Court may condition the issuance of a stay upon the furnishing of a supersedeas bond or other appropriate security. The Court has discretion in

determining the sufficiency of the supersedeas bond and the adequacy of the surety. *See Farmer v. Crocker Nat'l Bank (In re Swift Aire Lines, Inc.)*, 21 B.R. 12, 14 (B.A.P. 9th Cir. 1982).

A supersedeas bond is appropriate in this case. The Movants are occupying the Units without paying any rent. The stay of the Turnover Order prevents the Trustee from leasing the Units to other tenants who would pay rent. Further, the fact that three of the Units at the San Vicente Property are occupied by tenants not paying rent could depress the sale price. A supersedeas bond in the amount of the fair market rental value of the Units will ameliorate this potential injury.

By no later than February 21, 2017, both the Trustee and Movants must submit evidence of the fair market monthly rental value of the Units. Upon receipt of the evidence, the matter of the amount of the supersedeas bond will stand submitted. The parties will be notified in the event the Court requires a hearing.

<u>Conclusion</u>

Based upon the foregoing, the Motion seeking to stay the Turnover Order pending appeal is GRANTED, subject to a supersedeas bond in an appropriate amount to be determined by the Court. In the interim, the stay currently in place will remain in effect. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: February 10, 2017

Ernest M. Robles
United States Bankruptcy Judge