

**FILED & ENTERED**

**FEB 27 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Harry Roussos, Debtor<br><br>In re:    Theodosios Roussos, Debtor<br>(jointly administered) | Case Nos.:  2:15-bk-21624-ER and<br>2:15-bk-21626-ER (jointly administered)<br>Chapter:   7<br><br>**MEMORANDUM OF DECISION SETTING AMOUNT OF SUPERSEDEAS BOND AT $96,000.00**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    On February 10, 2017, the Court granted the motion of Theodosios Roussos ("Theodosios")[1] for a stay pending appeal of an order requiring Theodosios to turnover to the Chapter 7 Trustee ("Trustee") three apartment units (the "Units") located at 153 San Vicente Boulevard, Santa Monica, CA (the "San Vicente Property"). *See* Memorandum of Decision Granting Motion for a Stay Pending Appeal of Turnover Order [Doc. No. 726] and Order Granting Motion for a Stay Pending Appeal of Turnover Order [Doc. No. 727]. To compensate the estate for the lost rental value of the Units during the pendency of the appeal, the Court conditioned issuance of the stay upon the posting of a supersedeas bond. To determine the appropriate amount of the bond, the Court ordered Theodosios and the Trustee to submit evidence regarding the fair market monthly

---

[1] A given name is used to distinguish Theodosios Roussos from his brother, Harry Roussos, who is also involved in this litigation. No disrespect is intended.

rental value of the Units. Having reviewed the submissions of Theodosios and the Trustee, the Court now sets the amount of the supersedeas bond at $96,000.00.[2]

**Fair Market Monthly Rental Value of the Units**

The apartment building containing the three Units is located near the ocean in an upscale neighborhood in Santa Monica. Theodosios argues that the bond should be calculated based on a monthly rental value of $4,075 for all three Units ($1,541 for Unit 4B, $1,317 for Unit 3B, and $1,217 for Unit 4A). These figures are based on the Maximum Allowable Rent ("MAR") that may be charged to the current occupants under Santa Monica's Rent Control Ordinance. Because the current occupants (Theodosios and his family members) have lived in the Units for more than twenty years, the MAR applicable to them is far below the rent that could be charged to new tenants. The Trustee argues that the bond should be calculated based on the rent that new tenants would pay, which is estimated to be $4,000 to $4,075 for *each* of the Units (or an aggregate monthly rental value of $12,000 to $12,225 for all three Units). The Trustee's figures are derived from rental estimates provided by Michael Rees, who works for Seaside Properties, Inc., the property management company that has been approved by the Court to manage the San Vicente Property.

The Court finds that the bond should be calculated based on the rent that new tenants leasing the Units would pay, not based on the MAR applicable to the current occupants. The purpose of a supersedeas bond is to protect the prevailing party from any loss that may result from the stay. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n. 1 (9th Cir. 1987). But for the stay, the Trustee would have gained possession of the Units and could lease them out to new tenants at current market rates. To compensate the Trustee for the delay in gaining possession of the Units occasioned by the stay, the bond must be calculated based on the rent that the Trustee could otherwise have collected from new tenants during the pendency of the appeal. Based on the figures submitted by the Trustee, the Court finds that the current fair market monthly rental value of each Unit is $4,000, or $12,000 for all three Units.

**Amount of the Supersedeas Bond**

The order which has been stayed is not a simple money judgment; it is an order requiring Theodosios to turnover possession of the Units to the Trustee. Therefore, the Court is required to estimate the potential loss that the Trustee may incur as a result of the stay, and calculate the bond accordingly. *See, e.g., In re Weinhold*, 389 B.R. 783, 789 (Bankr. M.D. Fla. 2008) ("The Court recognizes that the calculation of a bond in a case involving a non-monetary judgment is only an estimate of the potential loss that may result during the pendency of the appeal."). Here, the primary unknown affecting the calculation of the bond is the amount of time it will take the District Court to hear the appeal and render a decision. After the District Court makes its decision, the stay entered by the Bankruptcy Court expires by operation of the law, and

---

[2] The Court reviewed the following papers in determining this matter:
1) Declaration of Theodosios T. Roussos in Response to the Bankruptcy Court's Memorandum of Decision Granting Motion for Stay Pending Appeal Dated February 10, 2017 [Doc. No. 732]; and
2) Declaration of Howard M. Ehrenberg in Support of Chapter 7 Trustee's Opposition to Emergency Motion of Theodosios Roussos for Stay Pending Appeal of Turnover Order [Doc. No. 733].

application must be made to the District Court for any additional stay. *See Lofsted v. Kendall (In re Kendall)*, 510 B.R. 356, 361 (Bankr. D. Colo. 2014); 10 Collier on Bankruptcy ¶ 8007.11 (16th rev'd ed. 2016) ("The general rule is that a stay granted under Rule 8007 expires when the appeal has been decided by the bankruptcy appellate panel or district court. At that point, it is incumbent upon the disappointed party to seek a stay pending an appeal to the court of appeals under Bankruptcy Rule 8025.").

On February 23, 2017, the District Court issued a notice, pursuant to Bankruptcy Rule 8010(b)(3), stating that the District Court had received the complete record of the proceedings conducted before the Bankruptcy Court. *See* Notice Re: Bankruptcy Record Complete [Doc. No. 9, Case No. 2:17-cv-00552-ODW]. Unless the deadlines set forth in Bankruptcy Rule 8016 are modified by the District Court, briefing on the appeal will be completed in 74 days. The District Court will then require time to hear and determine the matter. The appeal is complicated; at oral argument before the Bankruptcy Court, Theodosios presented twenty discrete arguments in opposition to the relief sought by the Trustee. *See* Transcript of January 4, 2017 Hearing [Doc. No. 697].

The Court will set the amount of the supersedeas bond based on the assumption that the District Court will render a decision by October 10, 2017. The rental value of the Units between February 10, 2017 (the date of entry of the Court's order granting the motion for a stay pending appeal) and October 10, 2017, is $96,000.00.[3] The Court is aware that it is possible that the District Court may decide the appeal prior to October 10, 2017. However, when courts require a party to post a bond to stay the execution of a money judgment, the amount of the bond is typically set well in excess of the amount of the judgment, in order to protect the prevailing party. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1109 (9th Cir. 2000) (holding that district court acted within its discretion in ordering defendant to post a $30,000 bond to secure a $11,900 judgment); *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1029 (N.D. Cal. 2012) ("Although practices vary among judges, a bond of 1.25 to 1.5 times the judgment is typically required."). Applying that principle here, the Court must be conservative in its assumptions regarding the length of the appellate process, in order to protect the Trustee.

The Court declines to set the bond in excess of the rental value of the Units, as requested by the Trustee. The Trustee argues that the continued presence of Theodosios and the other occupants will depress the ultimate sale price of the San Vicente Property. The Trustee has not presented sufficient evidence in support of that proposition.

As requested by Theodosios, the bond may be in the form of a cash bond, to be deposited into the Court's registry. In fact, a cash bond is preferable to a surety bond. The use of a surety bond would require the Court to determine whether the bonding company could be relied upon to perform. A cash bond obviates the necessity of such a determination.

The Court will enter an order consistent with this Memorandum of Decision.

---

[3] Based on a monthly rental value of $12,000 for all three Units, for a period of eight months.

###

Date: February 27, 2017

Ernest M. Robles
United States Bankruptcy Judge